Filed 7/24/24  P. v. Ayala CA4/3
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059900 |
| v. | (Super. Ct. No. 09CF2225) |
| OIRAM ROMAN AYALA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Matthew S. Anderson, Judge.  Reversed and remanded with directions.

David M. McKinney, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Alan L. Amann and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

Oiram Roman Ayala appeals an order summarily denying his petition for resentencing under Penal Code section 1172.6.[1]  In our original opinion, we affirmed the order on the belief the record of conviction proved appellant was liable for murder as a direct aider and abettor.  (*People v. Ayala* (Mar. 16, 2022, G059900) [nonpub. opn.] (*Ayala I*).)  However, the Supreme Court granted review, and following its opinion in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*), it directed us to reconsider the matter in light of that decision.  *Curiel* clarified the mens rea required for direct aiding and abetting.  Because the record of conviction does not conclusively establish appellant possessed that mental state, we reverse the trial court's order and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2006, appellant, Juan Roldan and several other members of their gang confronted a rival outfit in a Santa Ana alleyway.  After the two groups exchanged insults and gang signs, someone in appellant's group yelled out, "Shoot them already," and several shots rang out in rapid succession.

Two of appellant's rivals suffered fatal headshots, and a third, Fernando Garcia, was shot in the stomach but survived.  Garcia initially told the police that Roldan was the shooter, but when investigators interviewed him several months later, he said appellant was the one who pulled the trigger.

Appellant and Roldan were charged with two counts of first degree murder and one count each of attempted premeditated murder and

---

[1]  That section was originally housed in Penal Code section 1170.95, but it was subsequently renumbered without substantive change as Penal Code section 1172.6.  (Stats. 2022, ch. 58, § 10.)  All further statutory references are to the Penal Code.

street terrorism. (§§ 187, subd. (a), 664, 186.22, subd. (a).) The prosecution also alleged a principal in the crimes intentionally discharged a firearm causing death and great bodily injury. (§ 12022.53, subds. (b), (e).) And it alleged as special circumstances that defendants committed multiple murders and intended to further the activities of their gang. (§ 190.2, subds. (a)(3) & (a)(22).)

It took the state two trials to win a conviction. In the first trial, the prosecution argued defendants were guilty as either the actual perpetrators, or as direct aiders and abettors, but the jury was unable to reach a verdict. In the second trial, the prosecution added a third theory of culpability based on the natural and probable consequences doctrine, and the jury convicted defendants as charged. The trial court sentenced appellant to multiple terms of life without parole on the murder counts, plus concurrent terms on the remaining counts. We affirmed the judgment on appeal. (See *People v. Ayala* (Jan. 30, 2012, G044395) [nonpub. opn.].)

In 2019, appellant petitioned for resentencing. After appointing appellant counsel and considering the record of conviction, the trial court determined appellant was ineligible for resentencing because in finding the special circumstance allegations true, the jury necessarily determined he acted with the intent to kill. Therefore, it denied appellant's petition for failing to present a prima facie case for relief.

### DISCUSSION

As noted at the outset, our analysis in this case is guided by the Supreme Court's recent decision in *Curiel*, which made it clear that the intent to kill, standing alone, is insufficient to defeat a petition for resentencing under section 1172.6. *Curiel* also elucidated the requirements for imposing murder liability on the theory of direct aiding and abetting. In

3

light of that decision, we conclude the trial court erred in denying appellant's petition at the prima facie stage of the proceedings.

Appellant's claim for resentencing is grounded in Senate Bill No. 1437 (SB 1437), which narrowed the scope of vicarious liability for the crime of murder in California. (Stats. 2018, ch. 1015, §§ 2-4.) As relevant here, SB 1437 eliminated the natural and probable consequences theory for that offense by providing that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

SB 1437 also led to the enactment of section 1172.6 , which is the procedural mechanism for challenging a murder conviction based on vicarious liability. To obtain relief under that section, the defendant must show 1) he was prosecuted for murder on a theory under which malice was imputed to him based solely on his participation in a crime, 2) he was convicted of murder, and 3) and he would not be liable for murder today because of how SB 1437 redefined that offense. (§ 1172.6, subd. (a).) The statute applies in an analogous manner to defendants who were convicted of attempted murder based on the natural and probable consequences doctrine. (*Ibid*.)

If the defendant makes a prima facie showing for relief, the trial court is required to issue an order to show cause and conduct an evidentiary hearing. (§ 1172.6, subds. (c), (d).) At the hearing, the prosecution must prove beyond a reasonable doubt the defendant is ineligible for resentencing because his conduct did in fact rise to the level of murder or attempted murder as redefined by SB 1437. (*Id*., subd. (d)(3).) Otherwise, the defendant is entitled to vacatur and resentencing per the terms of section 1172.6.

In *People v. Lewis* (2021) 11 Cal.5th 952, our Supreme Court ruled the bar for establishing a prima facie case for resentencing is very low,

4

and the trial court's role in determining whether that bar has been cleared in a given case is quite limited. (*Id*. at pp. 970-972.) While the trial court may consider the underlying record of conviction, judicial factfinding is not allowed. (*Ibid*.) Unless the record of conviction proves the defendant is ineligible for resentencing as a matter of law, the court must issue an order to show cause and conduct an evidentiary hearing on his entitlement to relief. (*Id*. at p. 971, accord, *People v. Strong* (2022) 13 Cal.5th 698, 708.)

The Supreme Court's *Curiel* decision provides further guidance on the resentencing process. As relevant here, the court held a jury's finding the defendant acted with the intent to kill does not foreclose resentencing under section 1172.6. (*Curiel, supra,* 15 Cal.5th at pp. 460-463.) Rather, the record of conviction must establish the jury made all of the findings necessary to support a conviction for murder or attempted murder under current law. (*Id*. at pp. 463-471.) This requires proof the jury found the defendant harbored the necessary intent and he committed the necessary act or acts to be guilty under a presently valid theory of liability. (*Ibid*.)

At appellant's trial, the prosecutor argued appellant was guilty of first degree premeditated murder and attempted premeditated murder for personally firing the shots that killed and injured the victims. That was a plausible theory since the surviving victim Fernando Garcia identified appellant as the shooter. However, the prosecutor did not attempt to sell this theory very hard. In fact, because Garcia initially identified Roldan as the shooter, the prosecutor told the jury she believed Roldan was the actual gunman. Nevertheless, she argued that even if that was the case, appellant was still liable for murder and attempted murder because 1) he directly aided and abetted Roldan in carrying out the shooting, and/or 2) those crimes were

a natural and probable consequence of the targeted crime of disturbing the peace that appellant aided and abetted.

Consistent with the prosecutor's theories, the trial court instructed the jury on first degree premeditated murder, attempted premeditated murder, direct aiding and abetting, and the natural and probable consequences theory of aiding and abetting. In addition, the jurors were instructed per CALJIC No. 8.80.1 that if they found appellant guilty of first degree murder, they had to determine whether the special circumstance allegations were true. Under that instruction, if the jurors did not believe appellant was the actual killer, they could only find the special circumstance allegations true if appellant possessed the intent to kill, and he "aided, abetted or assisted any actor in the commission of the murder in the first degree."[2]

Thus, by finding appellant guilty of special circumstances murder, the jury determined, at a minimum, he harbored the intent to kill, and he aided, abetted or assisted another in committing first degree murder. The question we must decide is whether those findings satisfy all of the requirements for a currently valid theory of murder. More particularly, we must ascertain whether those findings prove appellant could still be convicted of murder on the theory of direct aiding and abetting, which would disqualify him for resentencing as a matter of law. (See *Curiel, supra*, 15

---

[2] The instruction was worded as follows: "Unless an intent to kill is an element of a special circumstance, if you are satisfied beyond a reasonable doubt that the defendant actually killed a human being, you need not find that the defendant intended to kill in order to find the special circumstance true. [¶] If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted or assisted any actor in the commission of the murder in the first degree." (CALJIC No. 8.80.1.)

6

Cal.5th at p. 462 [despite the passage of SB 1437, direct aiding and abetting remains a valid theory of murder under California law].)

In our previous opinion in this case, we answered that question in the affirmative. We determined that even if the jury did not convict appellant as the actual killer, its true finding on the gang special circumstance allegation proved not only that he intended to kill, but that he also directly aided and abetted the actual killer, so as to render him ineligible for resentencing. In so doing, we interpreted the phrase "aided, abetted or assisted" the commission of first degree murder in CALJIC No. 8.80.1 to encompass all of the elements of direct aiding and abetting. (*Ayala I, supra*, G059900, at pp. 9-10.) The Attorney General relies on that interpretation in urging us to again affirm the denial of appellant's petition. He contends an affirmance is required because the jury found all of the elements needed to convict appellant of murder under current law as a direct aider and abettor.

However, as *Curiel* makes clear, a finding of aiding, abetting *or* assisting, without more, does not conclusively establish direct aiding and abetting. Indeed, *Curiel* ruled that to be liable for directly aiding and abetting the crime of murder, the defendant must not only possess the intent to kill, he must also aid "'the commission of that offense with "knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends."'" [Citation.]" (*Curiel, supra,* 15 Cal.5th at p. 463.) In other words, the necessary mental state consists of both "intent and knowledge." (*In re Lopez* (2023) 14 Cal.5th 562, 579 (*Lopez*).)

The Attorney General correctly notes that the jury's instruction on aiding and abetting contained both of those requirements.[3]  Thus, if CALJIC No. 8.80.1 had been worded to require the jury to find that appellant intended to kill and that he "aided and abetted" first degree murder, then it would be reasonable to conclude it found all of the requirements for direct aiding and abetting.

However, CALJIC No. 8.80.1 was not worded in that fashion.  It did require proof that appellant harbored the intent to kill.  But as far as appellant's actions were concerned, it merely required proof that he "aided, abetted or assisted" the commission of first degree murder.  Thus, the jury could have convicted appellant of special circumstances murder simply because, acting with the intent to kill, he "assisted" another person in committing first degree murder.

Even when an accomplice harbors malice, assisting is not the same as aiding and abetting, as that term was defined in *Curiel*, and as it was defined for the jury in this case.  Although the language in CALJIC No. 8.80.1 "evokes similar concepts, it does not cover all of the elements of direct aiding and abetting." (*Lopez, supra*, 14 Cal.5th at p. 587.)  As a matter of fact, CALJIC No. 8.80.1 "falls far short of explaining these principles to the jury." (*Id*. at p. 588; see also *Curiel, supra*, 15 Cal.5th at pp. 464-465 [using the *Lopez* decision as a frame of reference for its analysis of the record of conviction presented in that case].)

_____

[3]     Per CALJIC No. 3.01, the jury was instructed:  "A person aids and abets the commission of a crime when he or she: [¶] (1) With knowledge of the unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] (3) By act or advice aids, promotes, encourages or instigates the commission of the crime."

Because CALJIC No. 8.80.1 did not require the jury to find appellant knew of the perpetrator's unlawful intent to commit murder and knowingly assisted him in achieving that unlawful objective, its true finding on the gang special circumstance allegation is insufficient to disqualify him for resentencing relief. Therefore, the trial court erred in denying his petition at the prima facie stage of the proceedings. (*Curiel, supra,* 15 Cal.5th at pp. 470-471.)

## DISPOSITION

Our prior decision in *Ayala I* is vacated, and the trial court's order denying appellant's petition for resentencing is reversed. The matter is remanded for the issuance of an order to show cause and an evidentiary hearing on appellant's entitlement to relief as provided in section 1172.6, subdivisions (c) and (d).



BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


GOODING, J.